**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PHILLIP JAMES BERG, Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant. | No. 2:25-CV-1307-DJC-ICD<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 11, 13). For the reasons discussed below, the undersigned recommends that Plaintiff's motion for summary judgment be granted, Defendant's cross-motion be denied, and the matter be remanded for further administrative proceedings.

The Court reviews the Commissioner's final decision to determine whether it is based on proper legal standards and supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The record, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

substantial evidence supports the administrative findings, or if conflicting evidence supports a particular finding, the Commissioner's finding is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229–30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g). The sequential evaluation proceeds as follows:

- Step 1: Determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled, and the claim is denied.
- Step 2: If the claimant is not engaged in substantial gainful activity, determine whether the claimant has a severe impairment; if not, the claimant is presumed not disabled, and the claim is denied.
- Step 3: If the claimant has one or more severe impairments, determine whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled, and the claim is granted.
- Step 4: If the claimant's impairment is not listed in the regulations, determine whether the impairment prevents the claimant from performing past work considering the claimant's residual functional capacity; if not, the claimant is presumed not disabled, and the claim is denied.
- Step 5: If the impairment prevents the claimant from performing past work, determine whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled, and the claim is denied.

See 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g).

To qualify for benefits, the claimant must establish an inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of not less than 12 months. See 42 U.S.C. §§ 423(d)(1)(A). The claimant must provide evidence of a physical or mental impairment of such severity that the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).

The claimant bears the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d at 1340; Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 879 F.2d at 501.

## II. THE COMMISSIONER'S FINDINGS

Plaintiff protectively filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on October 19, 2022, and October 17, 2022, respectively, alleging a disability onset date of February 28, 2022. See CAR 20.[1] The claims were denied initially on January 5, 2023, and upon reconsideration on October 27, 2023. See id. On April 8, 2024, an administrative hearing was conducted by telephone before an Administrative Law Judge (ALJ). See id.; CAR 56-80.

On May 24, 2024, the ALJ issued an unfavorable decision, rendering the following sequential findings of fact and conclusions of law. See CAR 20-36:

[1] Citations are to the Certified Administrative Record (CAR) lodged on June 25, 2025, ECF No. 9.

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2027.

2. The claimant has not engaged in substantial gainful activity since February 28, 2022, the alleged onset date.

3. The claimant has the following severe impairments: bipolar disorder, anxiety, depression, and lumbar disc disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant retains the residual functional capacity (RFC) to perform a range of medium work, specifically: lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand, and walk for 6 hours each in an 8-hour workday; frequently climb ramps and stairs, but occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; perform simple, routine, and repetitive tasks; and occasionally interact with the public.

6. The claimant is unable to perform any past relevant work as a medical transporter or janitor.

7. Considering the claimant's advanced age (55 years old on the alleged onset date), limited education, work experience, and RFC, jobs exist in significant numbers in the national economy that the claimant can perform, including Laborer Stores (64,700 jobs), Floor Waxer (25,700 jobs), and Custodian (98,000 jobs).

See CAR 21-36.

The Appeals Council denied Plaintiff's request for review on March 24, 2025 (CAR 1-5), making the ALJ's determination the final decision of the Commissioner subject to judicial review under Sentence Four of 42 U.S.C. § 405(g).

## III. DISCUSSION

Plaintiff challenges the Commissioner's decision on three main grounds: (A) the ALJ failed to provide clear and convincing reasons for discounting his subjective mental symptom statements; (B) the ALJ erred in evaluating the medical opinions of treating physician Dr. Lovato,

examining psychologist Dr. Clark-McKnight, and examining physicians Drs. Rongey and Sharma; and (C) the step five vocational findings are not supported by substantial evidence. See ECF Nos. 11, 14.

**A. Evaluation of Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony regarding severe anxiety, social isolation, paranoia, and auditory hallucinations (ECF No. 11 at 12-15). When a claimant provides objective evidence of an underlying impairment, and there is no evidence of malingering, an ALJ can reject subjective symptom testimony only by offering specific, clear, and convincing reasons. Ferguson v. O'Malley 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). General or boilerplate findings are legally insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the complaints. Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015).

Here, the ALJ discounted Plaintiff's statements based on a summary of objective clinical data showing an intact attention span and normal orientation (CAR 28-34). However, the Ninth Circuit has repeatedly clarified that providing a sequential summary of clinical data is not equivalent to a clear and convincing analysis. John, H. v. O'Malley, No. 2:23-CV-23-SI, 2024 WL 3534430, at *5 (D. Or. July 25, 2024); Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). Furthermore, an ALJ cannot disregard a claimant's symptom allegations solely due to a lack of complete objective corroboration. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

The Defendant argues that the ALJ properly discounted Plaintiff's subjective statements because they were inconsistent with his treatment history. ECF No. 13 at 2-5. The Defendant pointed to Plaintiff's daily tasks—sweeping, cooking, and doing dishes—along with self-reports that psychiatric medication calmed him down to discredit claims of total disability (ECF No. 13 at 2-3). As Plaintiff correctly observes (ECF No. 14), the ALJ merely recited these activities within a descriptive summary of the hearing testimony (CAR 27-28). The ALJ did not conduct a clear and convincing analysis explaining how occasional kitchen chores or partial medication efficacy contradicted a consistent history of profound agoraphobia and paranoia that forced Plaintiff to

isolate in his bedroom. Reviewing courts cannot affirm an agency decision based on post-hoc justifications that the ALJ did not explicitly rely on. Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ's subjective symptom assessment constitutes legal error.

**B. Evaluation of Medical Opinions**

Because Plaintiff filed his applications after March 27, 2017, the revised regulatory framework governs the evaluation of medical opinions. See 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ evaluates opinions based on their persuasiveness, with supportability and consistency "the most important factors." See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ cannot reject a treating or examining opinion without providing an explanation supported by substantial evidence. Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). The ALJ must "articulate . . . how persuasive" he finds "all of the medical opinions" from each source and "explain how [he] considered the supportability and consistency factors." Id. (quoting 20 C.F.R. § 404.1520c(b), (b)(2). A treating or examining relationship no longer entitles an opinion to special deference, id., and the ALJ may address all of a source's opinions "together in a single analysis" rather than articulating how he considered each one individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

1. Dr. Esteban Lovato (Treating Physician)

Dr. Lovato opined that Plaintiff had moderate limitations in using judgment and in maintaining pace and attention, moderate social and adaptive limits, and a marked restriction in sustaining regular work attendance (CAR 507-509). Asked for the medical support for his assessment, he wrote "severe anxiety." (CAR 509.) The ALJ found Dr. Lovato's assessment unpersuasive, noting it was only "marginally supported" by a cursory explanation citing "severe anxiety" and was inconsistent with the overall record (CAR 33–34).

The Commissioner is correct that an ALJ may discount a check-box opinion that offers little or no explanation. ECF No. 13 at 6 (citing Kitchen v. Kijakazi, 82 F.4th 732, 740–41 (9th Cir. 2023)). But supportability turns on "the objective medical evidence and supporting explanations presented by a medical source," 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), and a treating source's own contemporaneous treatment notes are part of that support. Cf. Garrison, 759

F.3d at 1013–14 (check-box opinions consistent with the source's treatment notes were entitled to weight). The ALJ's supportability analysis looked only at the face of the form. It did not address Dr. Lovato's treatment notes, which recorded "severe" depression and anxiety (CAR 560), "moderately severe depression" on screening (CAR 568), continuing "severe anxiety" (CAR 553), and "difficulty leaving the house and going to public places," poor sleep, paranoia, and hypervigilance (CAR 590).

The consistency finding has a similar problem. The ALJ relied on normal mental status findings scattered through the record (see CAR 28, 31 (citing CAR 520, 697, 700, 747, 761, 1261)). He did not reconcile them with the abnormal findings that appear throughout the specialty mental health records, including paranoid thought content, auditory hallucinations, depressed and irritable mood, and poor insight and judgment (e.g., CAR 520–21, 524–25, 530, 535, 697, 700–01). See Garrison, 759 F.3d at 1017–18. Because the ALJ's explanation does not grapple with this evidence, his finding that Dr. Lovato's opinion is unpersuasive is not supported by substantial evidence. Woods, 32 F.4th at 792.

2. Dr. G. Clark-McKnight, Ph.D. (Examining Psychologist)

Dr. Clark-McKnight conducted cognitive testing and opined that Plaintiff had moderate-to-marked limitations, as detailed in Exhibit B5F (CAR 537–46). The ALJ rejected Dr. Clark-McKnight's opinion as unpersuasive, asserting that the extremely low testing indices (including an extremely low range for Full Scale IQ and working memory) were invalid due to numeric variations between subsets (CAR 29-30).

This represents an impermissible substitution of lay administrative intuition for expert clinical judgment. Dr. Clark-McKnight explicitly clarified in her text that the multi-axial cognitive tests represented an accurate depiction of Plaintiff's actual low psychological functioning (CAR 539). Furthermore, the ALJ's finding that the testing was uncorroborated by a history of cognitive concerns (CAR 30) is directly contradicted by clinical records confirming Plaintiff was enrolled in special education classes (CAR 1229).

///

///

3. Drs. Christine Rongey and Satish K. Sharma (Examining Physicians)

Drs. Rongey and Sharma both evaluated Plaintiff's physical impairments and reached conclusions that are more restrictive than the ALJ's RFC. Dr. Rongey opined that Plaintiff was limited to standing or walking for no more than four hours in a workday and could only occasionally bend, stoop, crouch, or kneel (CAR 550-551). Dr. Sharma similarly restricted Plaintiff to light-duty lifting rules and occasional postural activities (CAR 660).

The ALJ erred in his treatment of the postural limitations. Both consultative examiners limited Plaintiff to occasional bending and stooping (CAR 550–51, 660), yet the RFC permits frequent stooping (CAR 26–27). The ALJ acknowledged Dr. Rongey's "occasional postural limitations," but his explanation addressed only whether her examination supported "the reduction to 4 hours of standing/walking" (CAR 31). He offered no explanation directed at the stooping limitation from either examiner (CAR 31–32).

The Commissioner responds that the ALJ need only evaluate each opinion as a whole, not each limitation within it. ECF No. 13 at 7–9. The regulations do call for source-level articulation, 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1), but the ALJ still must explain why he did not adopt an opined limitation that conflicts with the RFC. SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); see Woods, 32 F.4th at 792. The ALJ's reasons (normal strength, tone, and gait, and no assistive device (CAR 31–32)) explain his view of Plaintiff's ability to stand and walk. They say nothing about his ability to bend at the waist, which both examiners tied to Plaintiff's low back pain, lumbar tenderness, and reduced range of motion (CAR 549–51, 659–60). Two examining sources agreed on this limitation, and the ALJ did not explain why he rejected it. This is clearly an error.

The undersigned reaches a different conclusion about the exertional limitations. The ALJ discounted Dr. Rongey's four-hour standing and walking limit because her own examination showed that Plaintiff got into and out of a chair without difficulty, had good muscle tone and strength without wasting or weakness, could perform tandem gait, and did not need an assistive device (CAR 31 (citing CAR 548–50)). He also found the limit inconsistent with normal gait and

strength findings elsewhere in the record (CAR 31–32 (citing, e.g., CAR 535, 702, 763, 1235–36, 1250–51, 1263)), and he gave similar reasons for discounting Dr. Sharma's lifting restriction (CAR 32). Plaintiff argues that these findings are unrelated to back pain (ECF No. 11 at 23–24), but gait, strength, and the ability to rise from a chair bear directly on a person's capacity to stand, walk, and lift. The opinion evidence also conflicts. Dr. Sharma did not adopt Dr. Rongey's four-hour limit (CAR 660), and the state agency physicians, whose findings the ALJ found persuasive and Plaintiff does not challenge, assessed greater physical capacity (CAR 126–27, 214, 218–19; see CAR 30, 32). Where the evidence is susceptible to more than one rational interpretation, the ALJ's interpretation must be upheld. Thomas, 278 F.3d at 954. The undersigned therefore does not find that the ALJ erred in declining to adopt Dr. Rongey's standing and walking limitation or Dr. Sharma's lifting limitation.

**C. Step Five Findings and Application of the Grids**

The ALJ found at step five that Plaintiff could adjust to other occupations, specifically floor waxer, store laborer, and custodian (CAR 35). That finding is not supported by substantial evidence.

According to the Selected Characteristics of Occupational Titles, the companion to the Dictionary of Occupational Titles (DOT), the occupations of floor waxer (DOT § 381.687-034) and laborer of stores (DOT § 922.687-058) both require frequent bending and stooping. Because the ALJ failed to reject the occasional bending and stooping limitations assigned by both physical examiners, Drs. Rongey and Sharma (CAR 550–51, 660), those restrictions must be credited as a matter of law. An individual restricted to occasional bending and stooping cannot perform occupations requiring frequent execution of those postures, effectively eliminating these two medium job frameworks.

Furthermore, the third occupation, custodian, cannot fill the gap. The vocational expert identified by DOT code 381.687-010 (CAR 35, 78), which the DOT titles "central-supply worker" and classifies a requiring Reasoning Level 3. DOT 381.687-010 (4th ed., rev. 1991). There is an apparent conflict between an RFC limited to simple, routine, and repetitive tasks and the demands of Level 3 reasoning, Zavalin v. Colvin, 778 F3d 842, 847 (9th Cir. 2015), and the

ALJ was required to ask the vocational expert to reconcile it before relying on the testimony, id. at 846; Lamear v. Berryhill, 865 F.3d 1201,1205 (9th Cir. 2017). Neither the ALJ nor the vocational expert acknowledged the conflict (CAR 35, 78). The DOT also classifies the job as semi-skilled (SVP 4), which is difficult to square with the limitation to simple routine tasks and with the ALJ's apparent finding that Plaintiff has no transferable skills. The Commissioner does not defend this occupation; he argues only that the other two jobs suffice. ECF No. 13 at 9.

Plaintiff further argues that, had the ALJ credited Dr. Rongey's or Dr. Sharma's exertional limitations, the Grids would direct a finding of disability. ECF No. 11 at 26–27. For an individual of advanced age (55 or older) with a limited education and no transferable skills, Rules 202.02 (light) and 201.02 (sedentary) direct a finding of disabled. 20 C.F.R. §§ 404.1563(e), 416.963(e); where a claimant's exertional capacity falls between two rules that direct the same conclusion, that conclusion follows. SSR 83-12, 1983 WL 31253, at *2. But that argument depends on a predicate the undersigned does not find, namely that the ALJ erred in rejecting those exertional limitations. See supra Part III.B.3. The Grids therefore do not direct a finding of disability on this record.

## IV. REMEDY

The Ninth Circuit employs a strict three-part "credit-as-true" test to determine whether a case should be remanded for an immediate calculation of benefits or further administrative litigation. Generally, a court remands for an immediate award of benefits when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the credited evidence establishes that the claimant is disabled under the applicable legal frameworks. See Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

However, even when an ALJ's decision contains legal errors, the ordinary remedy is to remand the case for further administrative proceedings rather than an immediate award of benefits. In this matter, outstanding issues remain regarding the reconciliation of the medical source opinions, the evaluation of the claimant's subjective symptom testimony, and the step five vocational findings. Further administrative litigation will serve the useful purpose of allowing the

ALJ to properly evaluate the record as a whole, resolve conflicting medical evidence, and obtain clearer vocational expert testimony.

Specifically, further proceedings are required for the ALJ to properly articulate the persuasiveness of the physical and mental limitations assigned by treating and examining medical sources, including the specific postural restrictions assigned by Drs. Rongey and Sharma. Additionally, further development will allow the ALJ to conduct a legally sufficient subjective symptom analysis and properly address conflicts between the claimant's residual functional capacity and the occupational demands identified by the vocational expert.

Because there are outstanding factual issues and conflicts in the evidence that must be resolved by the agency, a directed verdict of disability is not warranted at this stage. Accordingly, the final decision of the Commissioner should be reversed, and the matter remanded to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings before the ALJ.

///

///

///

///

///

///

///

///

///

///

///

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's Motion for Summary Judgment be GRANTED.

2. Defendant's Cross-Motion for Summary Judgment be DENIED.

3. The final decision of the Commissioner of Social Security be REVERSED and this matter be REMANDED to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings before the ALJ consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 13, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE